UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------x
                                   :
KAREN DUCH,                        :
                                   :
                Plaintiff,         :    04 Civ. 109 (LAP)
                                   :
        -against-                  :    MEMORANDUM AND ORDER
                                   :
BRIAN KOHN individually and in his :
official capacity, LT. EDWARD      :
JACUBEK in his official capacity,  :
OFFICE OF COURT ADMINISTRATION,    :
and NEW YORK STATE,                :
                                   :
                Defendants.        :
                                   :
----------------------------------x

LORETTA A. PRESKA, U.S.D.J.

        Plaintiff Karen Duch brought the above-captioned

action for employment discrimination against Defendants

Brian Kohn ("Kohn"), Lt. Edward Jakubek ("Jakubek"),[1] the

Office of Court Administration ("OCA"), and New York State

("New York").  Defendants Jakubek, OCA, and New York

(collectively, the "Employer Defendants"), now jointly move

for summary judgment pursuant to Rule 56 of the Federal

Rules of Civil Procedure on the grounds that they are

immune from liability for violations of the New York State

Human Rights Law ("NYHRL") and New York City Human Rights

---

[1] Defendant Lt. Edward Jakubek was sued as "Lt. Edward
Jacubek."  The Court will refer to him as Defendant Lt.
Edward Jakubek herein because he uses that spelling in his
declaration filed on January 12, 2007.

1

Law ("NYCHRL") under the Eleventh Amendment, and that no liability for any hostile work environment under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. can be imputed to them.  Defendant Kohn, Plaintiff's co-employee, also moves for summary judgment dismissing the Title VII, NYHRL, and NYCHRL claims against him.  Finally, Plaintiff cross-moves for partial summary judgment on her Title VII claim against the Employer Defendants on the ground that she was subject to a hostile work environment and separately moves to amend her Complaint to include NYHRL and NYCHRL claims against Jakubek in his individual capacity.  For the following reasons, the joint motion of the Employer Defendants is granted, Kohn's motion is granted, and Plaintiff's cross-motion is denied.


BACKGROUND[2]

     At all times relevant to this case, Plaintiff was employed as a Court Officer by the New York State Unified Court System ("UCS"). (Employer Defs. 56.1 Stmt. ¶ 1.)[3]  OCA is the administrative arm of the UCS. (Id. ¶ 2.)  Plaintiff

---

[2] All facts recited in this section are undisputed unless otherwise noted.

[3] "Employer Defs. 56.1 Stmt." refers to the "Statement of Defendants State of New York, State of New York Office of Court Administration and Lt. Edward Jakubek Pursuant to Rule 56.1," filed on January 12, 2007.

entered the UCS Court Officers Academy (the "Academy") on June 28, 1999. (Id. ¶ 31.)  While at the Academy, Plaintiff received materials that she describes as "a booklet on sexual harassment policy." (Pl. Employer Reply 56.1 Stmt. ¶ 33; see also Employer Defs. 56.1 Stmt. ¶ 33.)[4]

On August 12, 1999, Plaintiff was assigned to Midtown Community Court ("MCC"). (Employer Defs. 56.1 Stmt. ¶ 34.) The MCC is located at 314 West 54th Street, New York, New York. (Id. ¶ 36.)  The personnel at the MCC consisted of one Judge, a Lieutenant, a Sergeant, approximately twelve Court Officers, and four Court Clerks. (Id. ¶ 39.)

During the period in question, Rosemary Christiano ("Christiano") was also a court officer and the Equal Employment Opportunity ("EEO") Liaison at the MCC. (Id. ¶ 63.)  Jakubek was the highest-ranking Court Officer at the MCC. (Id. ¶ 4.)  The highest-ranking administrative official at the MCC was Chief Court Clerk Don Vasti ("Vasti"). (Pl. Employer Reply 56.1 Stmt. ¶ 4.)  In March 1999, Kohn commenced working for the OCA as a Court Officer.  He was assigned to the MCC in May 2001. (Employer Defs. 56.1 Stmt. ¶¶ 5-6.)  Throughout the period in which

---

[4] "Pl. Employer Reply 56.1 Stmt." refers to Plaintiff's "Local Rule 56.1(b) Statement in Response to the Statement of Undisputed Material Facts of the State of New York, OCA, and Jacubek," filed on February 7, 2007.

Plaintiff worked with Kohn, they were of the same rank. (Pl. Kohn Reply 56.1 Stmt. ¶ 3.)[5]

On September 25, 2001, Plaintiff and Kohn engaged in a consensual sexual encounter at Plaintiff's apartment. (Employer Defs. 56.1 Stmt. ¶ 48.)  This encounter did not involve intercourse. (Pl. Employer Reply 56.1 Stmt. ¶ 48.)

From September 2001 until her departure in January 2002, Plaintiff testified that Kohn made a series of unwanted sexual advances towards her. (Noonan Opp. Decl., Ex. D at 65/6-12, 137/5-8, 272/8-13.)[6]  These advances included, according to Plaintiff, unwanted and sexually graphic language, physical gestures, and physical contact. (Id. at 69/1-17.)  The Employer Defendants acknowledge Plaintiff's allegations but do not take a position on the issue of the underlying alleged conduct. (Employer Defs. 56.1 Stmt. ¶ 50.)  Kohn admits to having had a consensual

---

[5] "Pl. Kohn Reply 56.1 Stmt." refers to "Plaintiff's Local Rule 56.1(b) Statement in Response to Defendant Kohn's Statement of Undisputed Material Facts," filed on January 21, 2007.

[6] "Noonan Opp. Decl." refers to the Declaration of B. Noonan, Esq., In Support of Plaintiff's Opposition to the Motion for Summary Judgment, filed on February 8, 2007. Exhibit D refers to the transcript of Plaintiff's deposition, dated February 10, 2005.

encounter with Plaintiff but denies that he sexually harassed her. (Kohn Aff. ¶ 11.)[7]

At some point in October 2001, Plaintiff asked Jakubek to change her schedule so that she would not have to work with Kohn. (Pl. Employer Reply 56.1 Stmt. ¶ 51.)  Jakubek responded by inquiring as to the reason for Plaintiff's request. (Id. ¶ 52.)  However, Plaintiff did not explain the basis for her request. (Id.; Noonan Opp. Decl., Ex. D at 115/11-25, 116/1-25, 117/1-25, 118/1-25, 119/1-15.) Plaintiff maintains that she "provided Jakubek with sufficient information that should have indicated to him that discriminatory conduct occurred" and maintains further that Jakubek stated, "I don't want to know what happened." (Id. ¶¶ 52, 57.)  Jakubek then spoke with Kohn and told him "to knock it off." (Employer Defs. 56.1 Stmt. ¶¶ 52, 55.) Thereafter, Jakubek did not schedule Plaintiff and Kohn to work together. (Id. ¶ 59.)

At some later point in October 2001, Plaintiff spoke with Christiano about Kohn's harassment. (Noonan Opp. Decl., Ex. D at 142/24-25.)  Prior to their first conversation, Plaintiff was unaware of Christiano's capacity as an EEO Liaison. (Id. at 144/1-21.)  During

---

[7] "Kohn Aff." refers to the Affidavit of Brian Kohn, filed on January 12, 2007.

their initial conversation, Christiano asked Plaintiff if she was telling her about this misconduct as a friend or in her capacity as an EEO Liaison. (Id. at 144/5-7.) Plaintiff responded, "I think I'm telling you as a friend." (Id. at 144/17-18.)

This exchange was where Plaintiff first learned that Christiano was the EEO Liaison. (Id. at 144/20-21.) Plaintiff never told Christiano to report Kohn's alleged behavior. (Id. at 217/24-218/3.)  Christiano testified that she asked whether Plaintiff wished her to report Kohn's conduct and that Plaintiff replied "absolutely not." (Employer Defs. 56.1 Stmt. ¶ 67.)  Plaintiff told Christiano of the harassment "hoping that Christiano would stop or report the conduct." (Pl. Employer Reply 56.1 Stmt. ¶¶ 66-67) (emphasis added.)

In December 2001, Court Officer David Joseph ("Joseph") replaced Christiano as EEO Liaison. (Pl. Employer Reply 56.1 Stmt. ¶ 67.)  Plaintiff informed Joseph of Kohn's alleged conduct and stated that she wanted to file a formal complaint. (Noonan Opp. Decl., Ex. J at 86/18-87/19.)[8]  Joseph then contacted Vasti and set up a meeting for them. (Id. at 88/13-16.)

---

[8] Exhibit J refers to the transcript of David Joseph's deposition, dated May 17, 2005.

On January 8, 2002, Plaintiff spoke with Vasti regarding Kohn's alleged conduct. (Employer Defs. 56.1 Stmt. ¶ 59.)  On January 11, 2002, Plaintiff filed a claim of discriminatory treatment with the Office of the Special Inspector General for Bias Matters. (Id. ¶ 60.)

That day, Special Inspector General of Bias Matters Desiree Kim investigated Plaintiff's complaint of sexual harassment. (Pl. 56.1 Stmt. ¶¶ 20-21.)[9]  The investigation included interviews of twenty individuals and an administrative hearing. (Employer Defs. 56.1 Stmt. ¶¶ 73-81.)  On the basis of this investigation, disciplinary charges were brought against Kohn. (Pl. 56.1 Stmt ¶ 24.) The UCS prosecuted Kohn in disciplinary hearings, seeking to prove Kohn guilty of misconduct. (Id. ¶ 34.)

The administrative disciplinary hearing culminated in the dismissal of all charges against Kohn on the ground that Plaintiff failed to submit to cross-examination. (Employer Defs. 56.1 Stmt. ¶¶ 102-103.)  Plaintiff does not dispute the fact of her absence from the proceedings but asserts that it was due to her being medically unfit to testify. (Pl. Employer Reply 56.1 Stmt. ¶ 89.)

---

[9] "Pl. 56.1 Stmt." refers to "Plaintiff's Local Rule 56.1(a) Statement of Undisputed Material Facts in Support of Plaintiff's Motion for Summary Judgment," filed on February 9, 2007.

Although the parties do not agree on the precise date or terms of Plaintiff's departure, it is undisputed that Plaintiff ceased to work for the UCS in December 2002. (Employer Defs. 56.1 Stmt. ¶¶ 68-72; Pl. Employer Reply 56.1 Stmt. ¶¶ 68-72.)  On January 7, 2004, Plaintiff commenced this action seeking compensatory damages of $600,000, punitive damages, costs and fees. (Noonan Opp. Decl., Ex. A at 5-6.)[10]

## DISCUSSION

1.  Legal Standard for Summary Judgment Under Rule 56

"Summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)).  "[A] party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

---

[10] Exhibit A refers to Plaintiff's Complaint, filed on January 7, 2004.

256 (1986) (citing Fed. R. Civ. P. 56(e)).  "Factual
disputes that are irrelevant or unnecessary" cannot defeat
a motion for summary judgment.  Id. at 248.

In determining whether a genuine issue of material
fact exists, a court must examine the evidence in the light
most favorable to the non-movant . . . ."  Lucente v. Int'l
Bus. Machs. Corp., 310 F.3d 243, 253 (2d Cir. 2002) (citing
Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S.
574, 587 (1986)); see also Stern v. Trs. of Columbia Univ.,
131 F.3d 305, 312 (2d Cir. 1997) ("In assessing the record
to determine whether there is such an issue, the court is
required to resolve all ambiguities and draw all
permissible factual inferences in favor of the party
against whom summary judgment is sought.").  Only if it is
apparent that no rational fact-finder "could find in favor
of the nonmoving party because the evidence to support its
case is so slight" should summary judgment be granted.
Gallo v. Prudential Residential Servs., Ltd. P'ship, 22
F.3d 1219, 1224 (2d Cir. 1994).


2.    Application to Motion by the Employer Defendants

     a.    State and Municipal Anti-Discrimination Claims

     The Eleventh Amendment of the Constitution bars a suit
in a court of the United States against a state, or one of

its agencies, absent its consent to such a suit or an express statutory waiver of immunity. U.S. Const. amend. XI; see also Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 99 (1984) ("We have insisted. . . that [a] State's consent [to suit in federal court] be unequivocally expressed."). It is well-settled that the scope of this immunity extends to a state official who is sued in his official capacity. See Jin Ying Gan v. City of New York, 996 F.2d 522, 529 (2d Cir. 1993) ("To the extent that a state official is sued for damages in his official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state."). Accordingly, New York, its agency, OCA, and the agency official, Jakubek, are each entitled to invoke Eleventh Amendment immunity.

New York has not waived its Eleventh Amendment immunity with respect to claims arising under the NYHRL or NYCHRL. See Feingold v. New York, 366 F.3d 138, 149 (2d Cir. 2004) ("The City of New York does not have the power to abrogate the immunity of the State, and we find no evidence that the State has consented to suit in Federal court under the [NYCHRL].") ; Jungels v. State Univ. Coll. of New York, 922 F. Supp. 779, 784 (W.D.N.Y. 1996) ("There

is no basis for finding . . . a waiver [of Eleventh
Amendment immunity from suit] in the text of the
[NYHRL].”), aff'd sub nom. Jungels v. Jones, 112 F.3d 504
(2d Cir. 1997).

Thus, Plaintiff's claims against the Employer
Defendants under the NYHRL and NYCHRL are dismissed. [11]

b.   Federal Anti-Discrimination Claim[12]

A Title VII hostile work environment claim has two
elements.  “[A] plaintiff must first show that the

_____

[11] Plaintiff's monetary claims against the Employer
Defendants under Title VII are not dismissed on this basis
because Congress validly abrogated their Eleventh Amendment
immunity when it enacted the statute. See Fitzpatrick v.
Bitzer, 427 U.S. 445, 456-57 (1976).  For the reasons
described herein, Plaintiff's Title VII claim is dismissed
on the merits.

[12] Plaintiff claims that she did not intend to pursue a
Title VII claim against Jakubek in his individual capacity.
(See Pl. Mem. at 4.)  Nonetheless, the Employer Defendants
move to dismiss such a claim. (See “Memorandum of Law on
Behalf of the State of New York, the State of New York
Office of Court Administration, and Lt. Edward Jakubek in
Support of Their Motion for Summary Judgment,” filed on
January 12, 2007 (“Employer Def. Memo”) at 15.)  Because
Plaintiff has not formally withdrawn this claim, in the
interests of justice and judicial economy, the Court
exercises its discretion to decide this matter.   The Court
of Appeals has held that “individuals are not subject to
liability under Title VII.” Wrighten v. Glowski, 232 F.3d
119, 120 (2d Cir. 2000); see also Mandell v. County of
Suffolk, 316 F.3d 368, 377 (2d Cir. 2002) (“[U]nder Title
VII individual supervisors are not subject to liability.”).
Thus to the extent Plaintiff asserts a Title VII claim
against Jakubek in his individual capacity, it is
dismissed.

harassment was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Feingold, 366 F.3d at 149 (quotations and citations omitted).  "Second, the plaintiff must demonstrate a specific basis for imputing the conduct creating the hostile work environment to the employer." Id. at 150.

## I.   Abusive Work Environment

Proving the existence of this element involves both an objective and subjective showing.  The evidence must be sufficient to support a conclusion that a reasonable employee in the victim's position would have experienced the conditions of his employment as altered for the worse. Id. (citing Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)); see also Torres v. Pisano, 116 F.3d 625, 632 (2d Cir. 1997).  In addition, the victim must subjectively perceive the work environment to be abusive. Feingold, 366 F.3d at 150.

In support of the claim that her work environment was abusive, Plaintiff testified that Kohn subjected her to unwanted sexual remarks (see Noonan Opp. Decl., Ex. D at 69/1-17), unwanted physical contact (id. at 273/16-25), and confronted her in a small courthouse bathroom and hampered

from leaving, despite her protests (<u>id.</u> at 138/2-17).
Plaintiff also testified that Kohn's harassment took a
psychological toll on her (<u>id.</u> at 300/8-12), caused her to
lose weight (<u>id.</u> at 348/2-9), and to alter her appearance
in an effort to make herself unattractive (<u>id.</u> at 309/3-
19).

The Court declines to address whether Plaintiff has
established the first element of a hostile work environment
claim because, for the reasons discussed below, the claim
fails as a matter of law on the second element.  In
addition, because the Court declines to exercise
supplemental jurisdiction over her NYHRL and NYCHRL claims
against Kohn, a New York court is the appropriate forum for
the resolution of that issue.


II.  <u>Employer Liability</u>

"An employer's liability for a hostile work
environment sexual harassment claim differs depending on
who does the harassing." <u>Curry v. District of Columbia</u>, 195
F.3d 654, 659 (D.C. Cir. 1999); <u>accord</u> <u>Fairbrother v.</u>
<u>Morrison</u>, 412 F.3d 39, 52 (2d Cir. 2005), <u>abrogated in part</u>
<u>on other grounds by</u> <u>Kessler v. Westchester County Dept. of</u>
<u>Soc. Servs.</u>, 461 F.3d 199 (2d Cir. 2006).

13

Where an employee's supervisor allegedly created a hostile work environment, an employer is presumptively liable. See Burlington Indus. v. Ellerth, 534 U.S. 742, 764-65 (1998); Faragher v. City of Boca Raton, 524 U.S. 775, 807 (1998); see also Fairbrother, 412 F.3d at 53. However, employers may interpose an affirmative defense to rebut that presumption. See Faragher, 524 U.S. at 807. If the employer took no tangible employment action in connection with the harassment, that defense must be established by proving the employer exercised reasonable care to prevent and promptly correct any sexually harassing behavior, and that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer. Id.; see also Fairbrother, 412 F.3d at 53.

Where an employee's co-worker allegedly created a hostile work environment, an employer will be liable if the harassed employee demonstrates that the employer either provided no reasonable avenue for complaint or knew, or in the exercise of reasonable care should have known, about the harassment yet did nothing about it. See Fairbrother, 412 F.3d at 52; Perry v. Ethan Allen, Inc., 115 F.3d 143, 149 (2d Cir. 1997). As repeatedly urged by counsel for Plaintiff during oral argument, this is a negligence

standard. <u>See</u> <u>Richardson v. New York State Dep't of Corr.</u>
<u>Serv.</u>, 180 F.3d 426, 441 (2d Cir. 1999) ("[I]f the harasser
is the victim's co-worker, the employer will be liable only
if it is negligent . . . ."), <u>abrogated in part on other</u>
<u>grounds by Kessler</u>, 461 F.3d 199; <u>see also</u> <u>Curry</u>, 195 F.3d
at 659 (noting that the Supreme Court, in <u>Faragher</u>, 524
U.S. 775, declined to disturb the general agreement among
circuits that a negligence standard governs employer
liability for a co-worker's harassment).

Here, there is no allegation by Plaintiff that
Jakubek, her supervisor, created a hostile work
environment. (<u>See</u> Pl. Mem. at 7-20.)[13]  Thus, the applicable
hostile work environment standard for assessing the
liability, if any, of the Employer Defendants is whether
they provided a reasonable avenue of complaint or knew, or
should have known, of the alleged sexual harassment but did
nothing about it.

---

[13] "Pl. Mem." refers to "Plaintiff's Memorandum of Law in
Opposition to the Motion for Summary Judgment of Defendants
and in Support of her Cross-Motion to Amend the Complaint
and for Summary Judgment as to the First Element of Title
VII Against Defendants State, OCA, and Jacubek," filed on
January 30, 2007.

i.   Reasonable Avenue of Complaint

On the record before the Court, no reasonable fact finder could conclude that the Employer Defendants failed to provide Plaintiff with a reasonable avenue of complaint. It is undisputed that Plaintiff's employer had an anti-discrimination policy (Noonan Decl., Ex. B)[14] and an anti-sexual harassment policy (Noonan Opp. Decl., Ex. Q at 4-9).[15]

The UCS Discrimination Claim Policy (the "Discrimination Policy") provided both informal and formal routes for the initiation and resolution of discrimination claims. (Noonan Decl., Ex. B.)  Informal resolution of claims included anti-discrimination panels and instructions for engaging in direct discussions. (Id.)  Formal resolution of claims included instructions for filing a claim, contacting the EEO officer responsible for investigating the claim, and the claim determination process. (Id.)  Additionally, relevant parts of the Discrimination Policy were disseminated on posters

_____

[14] "Noonan Decl." refers to the "Declaration of B. Noonan, Esq. In Support of Plaintiff's Motion for Summary Judgment Against the State, OCA, and Jacubek," filed on February. 9, 2007.  Exihibit B refers to the UCS Discrimination Claim Policy and Procedure.

[15] Exhibit Q refers to the UCS Sexual Harassment Policy and Procedures.

throughout the MCC. (Employer Defs. 56.1 Stmt. ¶¶ 40-42; Noonan Opp. Decl., Ex. D at 286/4-10.)

The UCS sexual harassment policy consisted of a booklet that included instructions on identifying and addressing sexual harassment.  It specified what kinds of behavior might be considered sexual harassment, what an employee should do if they think they are being sexually harassed, what kinds of records to keep, how to approach the harasser, how and when to approach a supervisor, and how the UCS's anti-discrimination panels can help an employee feeling harassed. (Noonan Opp. Decl., Ex. Q at 4-9.)

Plaintiff attempts to create an issue of fact by claiming that she never received training concerning discrimination or sexual harassment. (Pl. Employer Reply 56.1 Stmt. ¶ 32.)  However, Plaintiff concedes that she received "a booklet on sexual harassment policy." (Pl. Employer Reply 56.1 Stmt. ¶ 33.)  Further, Plaintiff does not dispute that she received classroom instruction during her time at the Academy in which different scenarios in the sexual harassment booklet were discussed and the corresponding appropriate conduct was determined. (Noonan Opp. Decl., Ex. D at 22/7-8, 24/7-25.)

Faced with similar records, courts have held that no reasonable fact-finder could conclude that the employers failed to provide a reasonable avenue for employees to complain of sexual harassment or discrimination. See Dawson v. County of Westchester, 351 F. Supp. 2d 176, 192 (S.D.N.Y. 2004) ("[T]here can be no dispute that the County provided a reasonable avenue of complaint because there was a sexual harassment policy in place . . . ."); Arias v. Nasdaq/Amex Market Group, No. 00 Civ. 9827, 2003 WL 354978, at *8 (S.D.N.Y. Feb. 18, 2003) (finding employer made reasonable avenues of complaint available to its employees where the employer had in place a written policy prohibiting illegal harassment, which provided details for reporting any incidents of harassment, and where the plaintiff received the policy). Accordingly, there is no genuine issue of material fact as to whether the Employer Defendants provided Plaintiff with a reasonable avenue of complaint.

### ii.    Imputation of Knowledge to Employer Defendants

Plaintiff contends that the Employer Defendants knew or should have known of the alleged sexual harassment based on two conversations. First, Plaintiff asserts that

Jakubek failed to infer that she was being harassed when she approached him to request a schedule change and that, even if Jakubek did not know of the harassment, fault still lies with him because he was negligent in failing to gain knowledge of it. (Pl. Mem. at 16-20.)  Second, Plaintiff claims that Christiano, the EEO liaison in whom Plaintiff explicitly confided as a friend, failed to file a formal complaint on her behalf. (Id. at 13-16.)  Each contention will be addressed in turn.

### a. Jakubek

Plaintiff points to several comments she made to Jakubek during their conversation in October 2001, see supra at 5, along with Jakubek's general knowledge of her character, in support of her contention that he, in fact, knew of the harassment.  She claims a) that she spoke with Jakubek privately, which she did not normally do; b) when she spoke with him, she was very quiet and humble, neither of which was typical of her; c) she asked for a schedule change, which was significant because Jakubek had made it clear to his staff that he would not change scheduling during the time in question (i.e., the aftermath of September 11, 2001) unless there was a very important reason; and d) that Jakubek was aware that Kohn acted

inappropriately towards women. (Pl. Mem. at 17).  However, it is undisputed that not once during her conversation with Jakubek did she advise him of Kohn's allegedly harassing behavior. (See supra at 5.)

"An official's actual or constructive knowledge of harassment will be imputed to the employer when principles of agency law so dictate." Torres, 116 F.3d at 636.  That will be the case when a) the official is at a sufficiently high level in the company's management hierarchy to qualify as a proxy for the company; or b) the official is charged with a duty to act on the knowledge and stop the harassment; or c) the official is charged with a duty to inform the company of harassment. Id. at 636-37.

While Jakubek was Plaintiff's supervisor, he was never told of, and did not witness, the alleged harassment. Thus, based on the record before the Court, no reasonable fact-finder could conclude that Jakubek actually knew of the harassment. See Curry, 195 F.3d at 661 (declining to hold that the employer or supervisor had knowledge of the alleged harassment when no supervisor ever witnessed the harassment and neither the plaintiff nor anyone else made the harassment known to the supervisor); Arias, 2003 WL 354978, at *10 (holding that, on its own, plaintiff's vague complaint to his supervisor that his fellow employees were

calling him names and bothering him was insufficient to put
his supervisor on notice of a hostile work environment
because the employee did not specifically indicate to his
supervisor that he was experiencing racial harassment); cf.
Fairbrother, 412 F.3d at 52 (finding a question of fact for
the jury where, unlike here, there was evidence that
plaintiff, in a meeting with her supervisor, "discussed
everything" and relayed "the whole situation" regarding the
alleged harassment); Richardson, 180 F.3d at 441 (finding
fact issues existed as to supervisor's actual knowledge
where plaintiff reported all but one incident of
discrimination to his supervisor and employer, and where
the employer did not dispute that it had knowledge of the
harassment).

Plaintiff claims, in the alternative, that even if
Jakubek did not know of the harassment, he is still to
blame because he should have gained knowledge of it through
the exercise of reasonable care. (Pl. Mem. at 17.)  Again,
Plaintiff never told Jakubek that she was being harassed.
(See supra at 19.)  Despite this lack of disclosure,
Jakubek inquired further and pressed Plaintiff to explain
why she wished to change her schedule so that she would not
have to work with Kohn. (Pl. Employer Reply 56.1 Stmt.
¶ 52; Employer Defs. 56.1 Stmt. ¶ 52.)  Plaintiff admits

21

she had no answer to this inquiry and told Jakubek that she could not talk about. (Pl. Employer Reply 56.1 Stmt. ¶ 52.) Furthermore, Jakubek did not simply ignore Plaintiff's complaint and request for a schedule change when he received no explanation.  Rather, he went to Kohn and asked him why Plaintiff did not want to work with him. (Id.; Employer Defs. 56.1 Stmt. ¶ 52.)[16]  Kohn responded that he and Plaintiff had an argument and he may have said something inappropriate. (Pl. Employer Reply 56.1 Stmt. ¶ 52.)  Though this gave Jakubek no indication that sexual harassment was involved, he told Kohn to "knock it off." (Employer Defs. 56.1 Stmt. ¶ 55.)

Plaintiff had plenty of opportunity to disclose the harassment to Jakubek.  That she decided against telling Jakubek does not negate his reasonable efforts to discern the facts surrounding the underlying problem.  In reversing a denial of judgment as a matter of law, the District of Columbia Circuit held that, where "[t]he [employer] had in place a policy against harassment, it had made its policy known and it had established an effective complaint procedure," the employer "was entitled to rely on its

---

[16] That Jakubek asked Kohn why Plaintiff did not want to work with him bolsters the determination that a reasonable fact-finder could only conclude that Jakubek had no actual knowledge of the harassment.

22

employees to bring problems with their co-workers to its attention." Curry, 195 F.3d at 661.  Thus, even viewing the evidence in light most favorable to Plaintiff, no reasonable fact-finder could conclude that Jakubek was negligent in not knowing of or finding out about the alleged harassment.

Plaintiff's citation to Distasio v. Perkin Elmer Corp., 157 F.3d 55 (2d Cir. 1998), does not change this conclusion.  There, the Court of Appeals found sufficient evidence in the record from which a reasonable fact-finder could conclude that the plaintiff's failure to report incidents of harassment was caused by her supervisor. Distasio, 157 F.3d at 64.  Here, there is no such evidence. Plaintiff alleges that Jakubek commented that he did not want to know what happened. (Pl. Employer Reply 56.1 Stmt. ¶ 52.)  However, even if true, that comment was made after Jakubek inquired of both Plaintiff and Kohn as to what had happened and received no satisfactory response. (Id.) Further, no reasonable fact-finder could conclude that Jakubek was hostile to Plaintiff's claim, for he changed her schedule despite not knowing why exactly she wished it to be changed. (Employer Defs. 56.1 Stmt. ¶ 58.) See Arias, 2003 WL 354978, at *9 (distinguishing Distasio, where the plaintiff was threatened with termination if she reported

23

further incidents, from a case where the plaintiff was merely rebuked for saying he would bypass his supervisor when reporting claims of harassment).

Thus, any liability cannot, as a matter of law, be imputed to the Employer Defendants on the basis that Jakubek had actual knowledge of the alleged harassment or was negligent in failing, through the exercise of reasonable care, to gain knowledge of the harassment, and did nothing about it.

### b. Christiano

Plaintiff claims that Christiano failed in her official duty to review complaints of discriminatory conduct and either stop it or report it. (See Pl. Mem. at 14.)  In particular, Plaintiff contends that when she told Christiano about the harassment she was experiencing, Christiano did nothing. (Id.)  Relying on the Court of Appeals' decisions in Distasio, 157 F.3d 55, and Torres, 166 F.3d 625, Plaintiff alleges that Christiano had an official or "strong" de facto duty to act as a conduit to management for complaints about work conditions. (Pl. Mem. at 14.)

The Court of Appeals has held that knowledge of non-management employees charged with substantial

responsibility for relaying employee complaints to management can be imputed to an employer. Torres, 116 F.3d at 637. The inaction of a co-worker who has knowledge of a harassee's complaint does not give rise to liability unless that co-worker has an official or strong de facto duty to act as a conduit to management for complaints about work conditions. Id. Further, if an employee can show reliance upon a reasonable impression, created by the employer, that a co-worker was under a duty to help other employees, that co-worker's knowledge can be imputed to the employer. See id. at 638.

In Torres, liability was imputed to the employer because the person who gained notice of the harassment was the harasser's supervisor. 116 F.3d at 637. In Distasio, liability was imputed to the employer where the employer's sexual harassment policy specifically stated that the employer was considered to have direct knowledge of the harassment when an employee has complained directly to a supervisor or one of the named people in the policy. 157 F.3d at 64. Here, however, there is no evidence that, at the time Plaintiff approached Christiano about the alleged harassment, Christiano was a supervisor or manager (either of Plaintiff or anyone else) or that she was charged with an official duty to relay employee complaints to

management. (See Noonan Opp. Decl., Ex. N; Noonan Opp.
Decl., Ex. Q.)

     The Unified Court System's Sexual Harassment Policy
and Procedure explicitly lays out steps employees should
take in the event they are being harassed. (Noonan Opp.
Decl., Ex. Q.)  An employees options include the following:
a) keeping a written record; b) letting the harasser know
that the behavior is unwelcome; c) enlisting the help of a
direct supervisor; d) discussing the problem with any
supervisor or manager within the UCS; e) calling on a
member of the UCS Anti-Discrimination Panel; or f) making a
formal complaint of sexual harassment by asking a
supervisor or manager to initiate an investigation of the
alleged harassment by going to the office of the Managing
Inspector General for Bias Complaints. (Id. at 5.)  None of
these options encompasses Christiano. Cf. Distasio, 157
F.3d at 65.

     Assuming arguendo that Christiano had a strong de
facto duty to report complaints of harassment to
management, this does not mean that liability is
automatically imputed to the Employer Defendants.
Plaintiff was unaware of Christiano's capacity as an EEO
Liaison when she first complained to Christiano about the
alleged harassment. (Noonan Opp. Decl., Ex. D at 144/1-21).

26

Despite her unspoken hopes that Christiano would report the alleged harassment (See Pl. Employer Reply 56.1 Stmt. ¶ 64) Plaintiff expressly alerted Christiano to the fact that she was confiding in her as a friend, not as an EEO Liaison. (Noonan Opp. Decl., Ex. D at 144/15-21.)  Further, Christiano testified, without contradiction, that she asked whether Plaintiff wished her to report Kohn's conduct and that Plaintiff replied "absolutely not." (Employer Defs. 56.1 Stmt. ¶ 67.)

Thus, viewing the record in the light most favorable to the Plaintiff, no reasonable fact-finder could conclude that she in any way relied upon an appearance of Christiano's duty to report harassment allegations. See Torres, 116 F.3d at 638 (finding that the law will not presume in every case that harassed members of Title VII's protected classes do not know what is best for themselves and cannot make reasonable decisions to delay pursuing harassment claims, perhaps for privacy or emotional reasons, and thus an employee's request to keep the matter confidential justified the supervisor's inaction). Imputation of Christiano's knowledge to the Employer Defendants is accordingly denied as a matter of law. See id. (quoting Restatement (Second) of Agency § 273 (1958) ("Except where there is reliance upon the appearance of

agency, a principal is not bound by knowledge of an agent concerning matters as to which he has only apparent authority.")).

### iii. Reasonable Response

Since no reasonable fact-finder could conclude that the Employer Defendants had either actual or constructive knowledge of the harassment Plaintiff was allegedly experiencing, the Court need not decide whether OCA failed to take appropriate remedial action.  Assuming arguendo that the Employer Defendants knew or should have known of the alleged harassment, however, their response was reasonable.

It is undisputed that, upon Plaintiff's request for a schedule change, Jakubek changed Plaintiff's schedule despite not knowing why exactly she wished it to be changed. (See supra at 21-22.) It is also undisputed that while Christiano may have had knowledge of the harassment Plaintiff was alleging, she was confided in as a friend and explicitly told not to report the complaint. (See supra at 26.) Finally, it is undisputed that on the same day Plaintiff filed a formal complaint, the Special Inspector General for Bias Matters commenced an investigation. (Employer Defs. 56.1 Stmt. ¶ 74.)  The investigation lasted

nearly forty-five days, and twenty individuals were interviewed. (Id.)  The investigation culminated in charges being brought against Plaintiff and a hearing. (Id. ¶¶ 76-80.)

Accordingly, even viewing the record in the light most favorable to the Plaintiff, no reasonable fact-finder could conclude that Jakubek, Christiano, and the OCA failed to respond reasonably to Plaintiff's actions, or lack thereof, when they were properly alerted to the harassment allegations.

3.   Application to Motion of Defendant Kohn

a.   Federal Anti-Discrimination Claim

Plaintiff states that she brings no cause of action against Kohn under Title VII. (Pl. Kohn Mem. at 1 n.1.)[17] Nonetheless, Kohn moves to have any Title VII claim against him dismissed because he asserts that he is not liable to Plaintiff as her co-employee under Title VII. (Kohn Mem. at 8.)[18]  In the interests of justice, the Court will assume that Plaintiff asserted a Title VII claim against Kohn.  As

_____

[17] "Pl. Kohn Mem." refers to "Plaintiff's Memorandum of Law in Opposition to Defendant Kohn's Motion for Summary Judgment," filed on Jan. 21, 2007.

[18] "Kohn Mem." refers to the "Memorandum of Law" attached to Defendant Kohn's "Notice of Motion for Summary Judgment," filed on Jan. 12, 2007.

discussed earlier, individuals are not subject to liability
under Title VII. (See supra at 11 n.11).  Accordingly,
Plaintiff's Title VII claim against Kohn is dismissed.


    b.   State and Municipal Anti-Discrimination Claims

      Plaintiff alleges that Kohn's conduct violated the
NYHRL and NYCHRL. (Pl. Kohn Mem. at 2, 6.)  Kohn asserts
that he is not subject to individual liability under these
statutes because he was never plaintiff's employer but
merely a "co-equal employee." (Kohn Mem. at 8.)
Alternatively, Kohn requests that the Court decline to
exercise pendant jurisdiction over Plaintiff's NYHRL and
NYCHRL claims against him in the absence of any remaining
federal claims. (Kohn Reply Mem. at 2, 6.)

      The Court of Appeals has held that individuals may be
liable under the NYHRL and NYCHRL. See Tomka v. Seiler
Corp., 66 F.3d 1295, 1317 (2d Cir. 1995).  Nevertheless,
the Court of Appeals has also "repeatedly held that a
district court particularly abuses its discretion when it
retains jurisdiction over state-law claims raising
unsettled questions of law following dismissal of all
original-jurisdiction claims." Kolari v. N.Y. Presbyterian
Hosp., 455 F.3d 118, 122 (2d Cir. 2006).  New York courts
are split on the issue of whether individual employees may

be held liable under the NYHRL. <u>Compare</u> <u>Steadman v.</u>
<u>Sinclair</u>, 636 N.Y.S.2d 325, 326 (App. Div. 1st Dep't 1996)
(holding that an individual may be liable for aiding in
discriminatory conduct under the NYHRL), <u>with</u> <u>Strauss v.</u>
<u>N.Y. Dep't of Educ.</u>, 805 N.Y.S.2d 704, 709 (App. Div. 3d
Dep't 2005) (holding that an individual cannot be liable
for aiding in discriminatory conduct under the NYHRL).

Here, all of Plaintiff's federal claims have been
dismissed.  In addition, the NYHRL and NYCHRL claims
against Kohn raise unsettled questions of state law.
Moreover, the Court declined to address the merits of the
alleged underlying harassment with respect to Kohn. (<u>See</u>
<u>supra</u> at 13.)  Similarly, the Court declines to exercise
jurisdiction and dismisses Plaintiff's NYHRL and NYCHRL
claims against Kohn without prejudice.[19] See <u>Carnegie-Melon</u>
<u>Univ. v. Cohill</u>, 484 U.S. 343, 350 (1988) ("[W]hen the
federal-law claims have dropped out of the lawsuit in its
early stages and only the state-law claims remain, the
federal court should decline the exercise of jurisdiction

---

[19] The Court addressed the merits of Plaintiff's NYHRL and
NYCHRL claims against the Employer Defendants because the
issue of whether the Eleventh Amendment immunizes the state
of New York, its agencies, and the officials thereof is a
well-settled question of law. (<u>See</u> <u>supra</u> at 9-10.)

by dismissing the case without prejudice.") (footnote omitted).


4.    Legal Standard for Motion to Amend Under Rule 15

"A party may amend [its] pleading once as a matter of course at any time before a responsive pleading is served . . . ." Fed. R. Civ. P. 15(a).  Where this is not possible, "a party may amend [its] pleading only by leave of court or by written consent of the adverse party . . . ." Id.

Courts consider several factors when deciding whether to grant leave including, inter alia, undue delay, bad faith, and the futility of the proposed amendment. See Grace v. Rosenstock, 228 F.3d 40, 53-54 (2d Cir. 2000). "An amendment to a pleading will be futile if a proposed claim could not withstand a motion to dismiss pursuant to Rule 12(b)(6)." Dougherty v. Town of North Hempstead Bd. of Zoning, 282 F.3d 83, 88 (2d Cir. 2002).


5.    Application to Motion by Plaintiff

Plaintiff seeks leave to assert a claim against Jakubek in his individual capacity under the NYHRL and NYCHRL. (Pl. Mem. at 23.)  The NYHRL makes it unlawful for

an employer to discriminate on the basis of, inter alia, race, creed, color, or sex. See N.Y. Exec. Law § 296 (McKinney 2007).  It further states that it shall be an unlawful discriminatory practice "for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or attempt to do so." Id. "The same standards of analysis used to evaluate aiding and abetting claims under the NYHRL apply to such claims under the NYCHRL because the language of the two laws is 'virtually identical.'" Feingold, 366 F.3d at 158.

Unlike Title VII, a supervisor or individual employee who actually participates in the conduct giving rise to a discrimination claim may be personally liable under the NYHRL and NYCHRL. Id. at 157; Tomka, 66 F.3d at 1317.  As stated herein, there is no allegation of supervisory harassment by Jakubek. (See supra at 15.)  Courts have interpreted this standard to mean that supervisors or individual employees may be found to have participated in the harassment alleged by a plaintiff, for purposes of the NYHRL and NYCHRL, even if they did not themselves take part in the primary discriminatory violation. See Ahmed v. Compass Group, No. 99 Civ. 100329, 2000 WL 1072299, at *5 (S.D.N.Y. Aug. 3, 2000); Lewis v. Triborough Bridge and Tunnel Auth., 77 F. Supp. 2d 376, 381 (S.D.N.Y. 1999).  For

example, a supervisor's failure to take adequate investigative or remedial measures can rise to the level of actual participation. <u>Ahmed</u>, 2000 WL 1072299, at *5; <u>Lewis</u>, 77 F. Supp. 2d at 381.

As discussed above, no reasonable fact-finder could conclude that Jakubek had actual knowledge of the harassment as Plaintiff opted not to tell him about it. (<u>See</u> <u>supra</u> at 19-20.)  In addition, as explained above, no reasonable fact-finder could conclude that Jakubek should have known about the harassment through the exercise of reasonable care. (<u>See</u> <u>supra</u> at 21-23.)  Moreover, from the record before the Court, the only conclusion a reasonable fact-finder could reach is that Jakubek nevertheless inquired into the matter and changed Plaintiff's schedule. (<u>See</u> <u>supra</u> at 21-22.)  For these reasons, Plaintiff cannot plead facts, which if believed, would be sufficient to show that Jakubek failed to take appropriate investigative or remedial measures.  "[I]f plaintiff fails to plead any facts suggesting that a defendant . . . was in any way involved in the alleged discriminatory scheme, the defendant may not be held liable under the [NY]HRL." <u>Lewis</u>, 77 F. Supp. 2d at 381; <u>Feingold</u>, 366 F.3d at 158 (applying same standard for NYCHRL claims).  Accordingly, Plaintiff's

motion to amend her complaint to sue Jakubek in his individual capacity is denied as futile.

## CONCLUSION

For the reasons stated above, the joint motion of the Employer Defendants for summary judgment [dkt. no. 22] is granted, Defendant Kohn's motion for summary judgment [dkt. nos. 25 & 26] is granted, and Plaintiff's cross-motions for summary judgment and to amend her Complaint [dkt. nos. 33 & 36] are denied.

SO ORDERED:

DATED:     New York, New York
           August 2, 2007

LORETTA A. PRESKA, U.S.D.J.